No. 698

**First Circuit**

**BAUDINE v. TECHE TRANSFER CO., INC.**

(October 8, 1930. Opinion and Decree.)
(December 1, 1930. Rehearing Refused.)

Lloyd A. Ray, of New Orleans, and Victor E. Planche, of Covington, attorneys for plaintiff, appellee.

Miller & Heintz, of Covington, attorneys for defendant, appellant.

LeBLANC, J. This is an appeal from a judgment in the district court in favor of plaintiff, Eyrie W. Baudinc, and which condemns the defendant, Teche Transfer Co., Inc., to pay him damages in the sum of $250 with legal interest from judicial demand.

Plaintiff, the appellee, has answered the appeal, asking for an increase in the amount of the judgment to the sum of $313.50, with interest, that being the amount originally prayed for.

The damages claimed resulted from a collision between the plaintiff's Nash sedan automobile and one of the defendant's passenger busses which occurred on the Old Spanish Trail between New Orleans and Bay St. Louis, Miss., at about 9:30 o'clock at night, on August 17, 1929. The immediate locality of the accident was at a bridge approximately five miles north of the town of Slidell, La. The direct charge of negligence made against the driver of the bus is, that he was driving at a reckless and illegal rate of speed and not having the bus under proper control while approaching a narrow bridge which plaintiff had just crossed over.

The defense is a denial of any negligence on the part of the bus driver and the same charge of negligence on the part of the plaintiff. Defendant, in reconvention, seeks to recover judgment against plaintiff in the sum of $217.

Fortunately, it appears to have been an accident in which there were no personal injuries, as the only damages asked for on either side consist of repairs to the automobiles.

The plaintiff was driving north towards Bay St. Louis, Miss., and the bus was on its way to New Orleans, La., making one of its regular trips from Mobile, Ala., to that city. The bridge where the two cars met is rather narrow. There is no exact measurement given as to its width, but we conclude from the evidence that it is with difficulty that two automobiles can pass over it at the same time. The situation is such as to require careful driving on the part of the drivers of the two cars which reach it simultaneously. The right-of-way is generally conceded to the car first entering upon a bridge, unless, of course, the driver speeds up to "beat the other one to it" or is otherwise reckless in the handling of his car. The question as to which was the first car to enter upon the bridge in this case, then, plays an important part in determining the culpability of either driver.

The plaintiff, relating how the accident occurred, states that he was about five miles from Slidell, "and on crossing this concrete bridge the transfer came along, and just as he was off the bridge this bus ran into and hit the back of his car and turned him over." Later on, when asked where his car was, with reference to the concrete bridge, at the time of the accident, he places it "about 12 or 14 feet this side of the bridge." By this side, he means the north side, or that toward Bay St. Louis. Two young ladies, one of them 12

years old, who were riding in his car with him, both testify that he was about three-quarters over the bridge at the moment of the collision. There is evidently some discrepancy between plaintiff and his witnesses on this point and other evidence relative to the position of the car after the accident, makes plaintiff's estimate of the exact point of contact highly improbable. The driver of the bus, Lee Boudreaux, places the point of collision on the south, or Slidell end of the bridge. In fact, he says that he "was practically off the bridge when the plaintiff came on it." The testimony of these, the only eye-witnesses to the accident who testified in the case, is so patently conflicting that it would be futile to attempt to reconcile it. Under such circumstances, usually, an appellate court is strongly influenced by the findings of the trial judge, unless they appear to be manifestly erroneous. They do not appear to be so in this case.

One of the witnesses, C. C. Provata, was placed on the stand by both sides. His testimony, impresses us as being fair and very reasonable. He is an automobile mechanic who lives at Slidell and apparently answered a call from the plaintiff to help him out of his trouble. He reached the scene of the accident about 40 minutes after it happened. He found plaintiff's automobile on the right-hand side of the road headed in the direction of Bay St. Louis, from eight to ten feet away from the bridge. He evidently means that it was on the north, or Bay St. Louis side of the bridge, because, in speaking of the location of the bus after the accident, he says it was "maybe eight feet" from the Slidell, or south side.

If the impact between the cars occurred on the Slidell or south end, it seems hardly probable that the Nash sedan would have continued clear across the bridge consid-

ering that it was going at a moderate rate of speed only, and considering also the size and weight of the bus with which it had come in contact. The photographs offered in evidence demonstrate that it received a very severe blow on the left rear end, hard enough, it would seem, to have thrown it against the railing of the bridge on its right-hand side. The bus, on the other hand, was traveling at the rate of 30 or 35 miles an hour, and had sufficient momentum to carry it across the bridge. Considering its size and weight as compared to that of the automobile, it is more improbable that it would have been thrown against the railing of the bridge on its left-hand side. These are physical facts which tend to corroborate the testimony of the two young ladies who were in plaintiff's car to the effect that they were three-quarters over or across the bridge when the impact took place. The defendant placed its master mechanic, A. C. Fournet, on the witness stand with the primary purpose, as it would seem, of showing that he discovered a puddle or wet spot on the gravel on the Slidell, or south end of the bridge, which he says smelled gasoline. He surmises, of course, that this was gasoline which leaked from the tank of plaintiff's automobile, which the evidence disclosed had been punctured. This witness had to go all the way from New Orleans and did not reach the spot of the accident until two hours after it happened. Considering the lapse of time that intervened and the fact that his testimony is merely an inference drawn by him from certain circumstances which he mentions. we are not disposed to accept it against the stronger physical facts referred to before.

The headlights on both the cars were burning and there was no obstruction, as far as the evidence shows, to prevent a

full view in front of each driver. If the driver of the Nash automobile was the first to enter upon the bridge and was almost across it, evidently it was the speed of the oncoming bus and the inability of the driver to bring it to a stop or slow it down sufficiently to permit the Nash car to get clear across which caused the accident, and for this, we must, as did the trial judge, hold him negligent. His negligence, of course, is that of his employer, the defendant, who is liable for the damages which resulted.

We do not know on what theory the district judge awarded the plaintiff the sum of $250. The obligation of the tortfeasor is to repair the damage caused by his fault or negligence. The damage in this case is to the plaintiff's automobile which, according to the uncontradicted testimony of a mechanic of ten years' experience, it will cost $313.50 to repair. He furnished a detailed list of all parts required and what the necessary labor cost would be and not one of these items is disputed. Under the law, "he is entitled to have his car made as good as it was before the accident." That is the measure of his damage. Croft v. Southern Hardwood Lbr. Co. et al., 7 La. App. 274. The fact that the repairs had not been made and the money for same actually paid, offers no reason why the defendant should not pay for the damage. Hays v. Brantley, 13 La. App. 219, 127 So. 5.

We think this case presents a situation where the appellee is clearly entitled to the increase in the amount of the judgment he asks for.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by increasing the amount therein allowed from the sum of $250 to the sum of $313.50, and that as thus amended, it be affirmed.